Case number 20-6016 Salem Pointe Capital LLC versus BEP Rarity Bay LLC et al. Oral argument is not to exceed 15 minutes for the appellant and 15 minutes to be shared by the appellees. Ms. Anderson for the appellant. Good morning. Ms. Anderson, you may proceed. Good morning. May it please the court, I am Adrienne Anderson for the appellant Rarity Bay Partners. If I may, I'd like to reserve three minutes for rebuttal in this matter. You may. This appeal presents the question of whether the rules of civil procedure enable or restrict the federal court in its exercise of its inherent power to achieve justice and to prevent abuse and injustice. Now we've cited a number of reasons in our briefs as to why this court should reverse the dismissal of this action and reverse the denial of Rarity Bay Partners' motions to intervene. But for today's purposes, I'd really like to focus on two important issues for this court to provide guidance and direction. And those issues are whether the district court exceeded the boundaries of its discretion in determining the Rarity Bay Partners' motion to intervene was untimely and whether the following of a stipulation of dismissal removes the court's jurisdiction to rule on Rarity Bay Partners' prior pending motion to intervene. Let me ask you just a question. You said we should set aside the order of judgment, whatever, and allow your client to intervene. Correct? Yes, your honor. What happens to the settlement in that issue, in that question? Settlement's still there or? Well, yes. The unauthorized settlement has been challenged in a state court proceeding. It is currently proceeding at this point in time. Well, what's the necessity then of reopening the case if the real issue that is what your client's entitled to is being litigated in the state court? Well, in the federal court action, it was a lien foreclosure action, and the rights that my client seeks to proceed with in the federal court action is the lien foreclosure action. In the state court action, the only question is whether the settlement is valid or void. So, the determination for the state court is simply whether the settlement is to be set aside. The lien releases that were executed as part of that settlement would be decided by the state court as to whether the settlement is valid or invalid and should be set aside. And then the federal court action would proceed on that question, lien foreclosure. They're two separate questions. The federal court action decides how much does Bald Eagle owe. The state court action decides whether the settlement is invalid. Well, if the court finds, though, that the stipulation of dismissal is valid and that the court loses jurisdiction, what is there for the federal court to decide? I mean, you can't pick and choose, can you? Well, the question of the stipulation of dismissal we would submit is not a jurisdictional question. It's a judicial question. In this case, we have a motion to intervene that is filed two weeks before the stipulation of dismissal is entered. The court said that it lost jurisdiction to consider the motion to intervene and is powerless because of the following of the second stipulation of dismissal. Well, what that means is that no matter how valid a motion to intervene might be, no matter how significant the intervener's rights may be, no matter how long the motion is pending, that the named parties can prevent intervention simply by filing the stipulation of dismissal. And we submit that it means that the rights of the proposed intervener are dependent upon how quickly the court reacts and rules on the motion to intervene. I know you have lots of things you want to cover, but let me ask you this. What specific fraud are you alleging under 60b-3? You know, you say that it was the stipulation after September 23rd, 2019 for the parties engaged in meaningful dispute resolution, and you say that that can't be true because the named parties were in settlement negotiations long before the 23rd. So under a literal reading of the stipulation, it doesn't suggest that the September 23rd order was the only thing that led to a settlement negotiation. So again, hone in on the specific fraud that you are alleging occurred that led to the stipulation. Yes, the fraud that occurred began long ago. The fraud occurred when SPC and Bald Eagle agreed back in March of 2019 to settle this case for $500,000 and transferring rights to Bald Eagle. And that was their settlement agreement. They agreed on the material terms of settlement in March of 2019. Then they used the motions practice in the court, following motions for summary judgment, proceeding with all of that, as if they believed there still was litigation that was in full swing. If your client became aware or reasonably should have become aware that that was going on, was there a duty on the part of your client to seek to intervene at that point? That is an important issue. My client thought its interests were protected because there was an attorney, Garrett representing both my client, Rarity Bay Partners, and SPC. And that attorney was deceived by SPC and by Bald Eagle and its attorneys. And we've set out those facts in our briefs. And Mr. Swartwood did not know, nor did Rarity Bay Partners know, that this settlement negotiation was ongoing between Bald Eagle and SPC. Mr. Swartwood, an officer of the court, was deceived as to what was going on. The only way that my client would have known that its interests were not protected by joint representation of Mr. Swartwood and the agreement with SPC, that there would be no settlement without the agreement of both my client and SPC. The only way that we would have known that that was not true, was to anticipate that SPC was going to violate its agreement and that the attorneys working for SPC and Bald Eagle were going to deceive Mr. Swartwood. The evidence before the court is that Mr. Swartwood did not know that they were proceeding with this settlement outside of the communications with him, which were that settlement discussions had ended. So that is part of the fraud on the court. The other problems with the stipulation of dismissal, bear in mind, there is still a contract between Rarity Bay Partners and SPC requiring that they jointly agree to who represents the plaintiff in this action. And then they had entered this stipulation of dismissal, both the jointly agreed upon. And so that was a problem with the stipulation of dismissal. But we go back, I believe, to what about, and I grant you it's just an offhand comment, but didn't the judge say something that if she allowed the intervention she'd lose jurisdiction? Oh, she was talking about diversity jurisdiction. I believe that may be what you're referring to. Yes, if I allow the intervention I lose the jurisdiction. I think she said something along those lines but did not make that determination. There was not a final ruling about whether... Is that true? I mean, if we say you're entitled to an intervention, is there anything for the district court or has she lost jurisdiction? No, there would not be. And in the first motion to intervene that was filed, let me put this out, we put this together very quickly within hours of finding out of the deception of Attorney Sportwood. There was a claim against SPC for violation of the contract. Now that would have been a cross claim against SPC. And our position is that that would not necessarily have destroyed jurisdiction because the supplemental jurisdiction provisions of 28 U.S.C. 1367b indicate an intent that original plaintiffs, but not defendants or third parties, circumvent the requirements of diversity. But when we renewed the motion to intervene, the court had said in the October hearing that she would allow us to refile the motion to intervene when the stay was lifted. When we filed the motion for relief from stay and to assert the motion to intervene with more evidence of why we should be allowed to intervene, we had a complaint with that that did not include any state law claims against SPC. So the diversity issue essentially went away when we filed the second motion to intervene with a revised complaint with that and the additional facts that supported intervention. So I hope I'm answering the question. I don't know. I think about it a little bit. Go ahead. So I think one of the critical issues for this court is what was stated as a jurisdictional issue, but again we believe is really a procedural issue. And that is that the court should determine the actual parties in the case who have appeared by filing the motion to intervene and the court's ruling on the motion to intervene before determining whether a stipulation of dismissal under Rule 41 has actually been signed by all parties who have appeared. That is simply an orderly procedure to be followed by the courts that would not make the rights of the intervener dependent upon the speed of the court. I believe my time has ended and so I will rest subject to rebuttal. All right. Any further questions at this point? Judge Sir Heinrich? Judge Donald? No. I have none. Okay. All right. Let's hear from Salem Point Capital. Attorney. Good morning. May it please the court. Brandon Morrow on behalf of the athlete Salem Point Capital. Rarity Bay Partners, the appellant in this case, appeals the decisions of the late Chief Judge of the Eastern District of Tennessee, Pamela L. Reeves, denying its motions to intervene and to set aside a stipulation of dismissal. Now, Partners had been aware of even directing litigation from its inception only when it realized that it could not control the litigation from the sidelines did it attempt to intervene and then attempt to set aside the valid second stipulation of dismissal. The district court's well-reasoned decision should be affirmed for four different reasons. First, the district court did not abuse its discretion in holding that Partners' first application to intervene was untimely. Second, the district court did not err in denying Partners' second application to intervene because it was rendered moot by the filing of the party's stipulation of dismissal. Okay. Under your theory, at what point was Rarity Bay obligated to intervene if it sought to do so? Judge Donald, I think that the facts in this case would show that Rarity Bay Partners was aware of its interest in the case from the very beginning. Obviously, it had monitored the case, had been getting updates on the case, so it was aware of its interest in the case from the very beginning, and so our position would be from the get-go you're on. There should have been been no delay by Partners in this case, but Partners argues that if we follow the line of cases that say, well, you have to look at your, the other counsel for the other side says that her client was allowed to pick the the attorney and they didn't fill him in as to the settlement as to these negotiations, and yet he was the attorney of record, as I understand. Your Honor, at least as of May 2019, Counsel Swartwood, which is the attorney that Ms. Anderson referenced, even by then, he was aware that settlement negotiations were going on, and in his affidavit, he testified that that surprised him. So even if we look at the line of cases that say actual knowledge of the possibility of settlement jeopardizing legal interest is the starting point from which a party should have known to intervene. In that case, that starts here in early May of 2019, and the first application to later. But again, our position is Partners had an interest. It knew of that interest from the very beginning. It chose to stay on the sidelines. Is it your position, though, that because Mr. Swartwood was a counsel of record, in these negotiations and the notices, were your clients, I mean, was Mr. Swartwood being formally noticed of the various proceedings and the commencement of the settlement negotiations? Was he formally notified of that by you and your clients? Well, I think formal notification in this case, I don't know necessarily what formal notification means, but there are certainly emails in the record, Judge Donald, that show that settlement discussions were taking place between the parties, and I would also point out on this point that, and we pointed this out in our brief, that the counsel, Swartwood, at one point had even recommended the $500,000 settlement that ultimately took place, had recommended that was reasonable and should be accepted. So to say that he was unaware of any settlement negotiations whatsoever simply wouldn't be accurate. Now, getting into the timeliness analysis that that Ms. Anderson began to speak about. You know, negotiating the settlement is one thing, the conclusion of the settlement is another thing. Was he aware of that, that they had ultimately concluded? I think the record would reflect, Judge Sir Heinrich, that at that point, Salem Point Capital Partners was aware that Mr. Swartwood was not representing its interests in the case, and so the parties, Salem Point Capital and Bald Eagle, were proceeding with settlement at that point. That kind of violates your agreement, doesn't it? They agree to have the defendant pick the counsel, or the planner. Your Honor, when the negotiate, when the willingness of partners in this case to negotiate came to an end, when partners said, you know, we're not going any further in terms of negotiations, then Salem Point Capital at that point was left to either reach an agreement with Bald Eagle upon terms that it found was reasonable, or continue spending a significant amount of money on this litigation, when its other option was there was a resolution in sight, and that's what it opted to do. Your Honor, you raise a good point about the contract issue, and there are manifold arguments in this case by Rarity Bay Partners that really are more breach of contract issues, which are not before this court today. They're present in other litigation pending in state court in Tennessee, but they're not in this federal appeal. I'm just trying to figure out what the facts are in this case. It's an unusual case, at least procedurally in my mind, but go ahead. There's no doubt about that, Your Honor, that it's an unusual case, and that was something that was certainly reflected in the district court's opinions. Briefly, turning to the five timeliness factors on the first application to for an abuse of discretion, and when the court looks at Judge Reeves' opinion, it is well-reasoned, and it analyzes each of these five factors, the first of which is the progress. Now, we're not necessarily talking about the time that the case has been pending, but what's actually happened in the case, and Judge Reeves did not err when she held that extensive progress and substantial motion practice had taken place, including cross motions for summary judgment, which militated in favor of a finding that intervention was untimely. Now, we also have to look at the purpose for which the intervention was sought, and if partners in this case had been allowed to intervene and assert that first intervening complaint in this case, it wasn't just seeking to protect its collection interests with respect to Bald Eagle, but what it was seeking to do was file a breach of contract claim against Salem Point Capital, and that would have rewritten, expanded the scope of this litigation, and the Kirsch case says that a party seeking to intervene to rewrite the course of litigation must intervene sooner than a party seeking to intervene to preserve its interests on appeal. I see that my time has run, but if the court has any questions, I'd be more than happy to entertain those. Any further questions? Judge Schorheinrich? Judge Donaldson? All right, thank you, counsel. Your Honor, if ready, I'm prepared to proceed. Yes, you may. Mr. Griffith? Good morning, Judges Schorheinrich, Griffith, and Donald. May it please the court. My name is Aubrey Greer, and I, along with my co-counsel, Mr. Josh Kahane, and our firm, Glencler Brown, here in Memphis, Tennessee, represent the defendant Appalese BEP Rarity Bay and Bald Eagle Ventures, LLC. For the sake of clarity, I'm just going to refer to my client, the Appalese, as BEP. Mr. Morrow has addressed this court on the intervention issues. I will now address the court on RBP's misplaced contention that the joint stipulation of dismissal should be set aside. RBP's argument fails for multiple reasons. First, RBP cannot itself invoke Rule 60, and in any event, there's no order or judgment to be relieved from here. Second, Judge Reeves was well aware of all the purported malfeasance that came to her decision, notwithstanding all of those allegations. And third, RBP failed the legal test for relief under Rule 60B and failed to meet its burden of proof, and the burdens here are important. Judge Reeves' decision to deny RBP's request for intervention is reviewed for an abuse of discretion, and in looking at abuse of discretion, the court has characterized that as a definite and firm conviction that the trial court committed a clear error of judgment. This standard is, of course, RBP's concomitant duty to prove the various things it said by clear and convincing evidence. It fails to do that. As a threshold matter, RBP's request to overturn Judge Reeves' decision is simply not available under Rule 60B as the individual or entity invoking... Your argument, in a nutshell, is a nod to, hey, I had a plaintiff against me, I negotiated a settlement, we got a plaintiff and a plaintiff that's in business. Is that pretty much it? I'm sorry, Your Honor, could you repeat? I was having a little bit of trouble hearing you. I'm sorry. Can you repeat that? Well, go ahead. We'll listen to you and not to me. Go ahead. Make your argument. Yes, Your Honor. There are and always have been only three parties to this litigation. That's the defendants, BEP and BEB, and the plaintiff, SPC. RBP is not now nor has it ever been a party. There's no doubt that Judge Reeves' decision not to overturn the stipulation of dismissal was correct. However, even if there is some level of metaphysical doubt, her decision was not one that evidences the clear sort of error in judgment required to overturn it. Even if RBP... So even though Rarity Bay was not a party, even if we accept that, you don't deny that it had substantial interest and was, at least at some point, seeking to protect those interests because in the, I guess, collections agreement, there was a reference or there was an express, I guess, obligation to consider them, right? Certainly, Your Honor. There was obviously a contract between SPC and RBP about collecting on the liens that were asserted against BEP's property. So even though they weren't a party, there was still this contract that mandated the protection of their interests, and they had an attorney involved in protecting their interests, right? Correct, Your Honor. Certainly, by and through the collection agreement, there was some sort of right or ability to participate in the litigation. Now, that wasn't unilateral. That has to go through SPC. RBP can't get to BEP or the liens without SPC. Obviously, their interests diverged at some point. As Ms. Morrow mentioned, excuse me, Mr. Morrow mentioned, SPC discovered that RBP was no longer properly representing its interests, communicating with it, discussing settlement. So SPC's interests diverged from RBP at that point, and as Judge Sir Heinrich mentioned, that might very well be a breach of a contract. It could. That's before the Knox County Circuit Court right now. However, that breach of that ancillary agreement doesn't affect what we're talking about here today. It might entitle RBP to damages down the road from the Circuit Court. It might not, but that is an issue that's really not before, wasn't before the District Court, and it's not before this panel. Even assuming that Rule 60 was the proper vehicle for RBP to do what it sought to do, and it sought relief under subsections 3, 4, and 6 of Rule 60B, they've alleged that there's fraud, that the judgment is void, or that if none of that works, a catch-all under 60B-6, that lets them go ahead and set aside stipulation of dismissal. But they're simply incorrect. RBP's assertion of fraud in the filing of the everything that was put in the joint stipulation, all the facts, all the circumstances, everything Ms. Andert said in her brief, everything she said today was before the court. The court wasn't tricked into allowing the dismissal, nor was it required to sign off on the dismissal. The Rule 41 dismissal is self-effectuating. There was no underhanded, devious conduct that tricked the court into allowing the dismissal. It's simply not present. RBP disagrees. I will grant them that. They disagree with the propriety of SPC dismissing the case. They disagree with some of the things that were said in the stipulation. That certainly doesn't rise to the level of fraud, and Judge Reeves noted that. She noted that parties often characterize the litigation in different ways, but it wasn't something in the vein of a misrepresentation or a fraud to gain some sort of advantage or to present. Judge Reeves was aware of everything that RBP is alleging and still came to her decision notwithstanding. RBP also says that the Rule 41 stipulation should be set aside because it's void under Section B4. Well, that exception is used very, very narrowly, and there's no order or judgment to be void. Void just really only comes up when there is some sort of jurisdiction, so this idea that the stipulation dismissal is void just simply fails. Having failed to demonstrate any of those things, RBP says the B6 catch-all covers everything, but all this is is just a repackaged version of what they claim under Sections 3 and 4. Judge Reeves recognized that SPC's choice retaining new counsel and dismissing the case may very well be a breach of an ancillary agreement, and it may very well entitle RBP to a case it's already litigating, but it doesn't allow for the resurrection of this case here. Your Honors, I see my time has expired. All right, thank you. Any further questions, Judge SirHeinberg, Judge Donaldson? All right, thank you for your arguments, Mr. Greer. Ms. Anderson, you have three minutes for rebuttal. Thank you. Let me first answer a question that was raised about the knowledge of Mr. Swartwood, and I would refer the Court to the Record 63-2, the Affidavit of Eric Swartwood at paragraph 25, because there he says that he was never involved in reviewing or revising settlement documents. In fact, I had no knowledge of anyone exchanging settlement terms or documents with the attorneys for the Bald Eagle defendant, other than an email exchange with Mr. Baxter and Mr. Ramsey on May 9, in which I expressly directed that all settlement negotiations needed to come through me. Neither Mr. Baxter nor Mr. Ramsey advised me that any settlement documents or proposed dismissal was being prepared, exchanged, negotiated, or discussed. And in fact, the very day that the stipulation of dismissal was signed by an attorney not of record and entered, the attorney for Bald Eagle was asking Mr. Swartwood for an extension of discovery deadlines, despite the fact that the settlement documents had already been signed. He was intentionally deceived by both parties in this case. That is the really unusual circumstance in this case. The Court was required to view on a motion to intervene the facts in the light most favorable to the move-in and did not do so. That is the abuse of discretion going beyond that boundary of viewing the facts in the light most favorable to the move-in. Looking at the progress of the case, the Court did not say, did not indicate, and there is nothing in the record to indicate, there would have been any change in the scheduling order, no deadlines that would have been changed or missed by allowing intervention, nothing to be redone. So there really is not, the Court did not even acknowledge the interest that Raribay Partners had in receiving half of the monetary proceeds of the settlement and all of the property that would be achieved by any foreclosure on Bald Eagle's property. Looking at the question of Rule 60, and bear in mind that it's Raribay Partners' position that the stipulation of dismissal should not have been allowed, that the motion to intervene should have been granted first. On a Rule 60 motion, the Court looks at a case-by-case factual inquiry balancing the policy of finality and, and I quote from the Blue Diamond Coal case, the incessant command of the Court's conscience that justice be done in light of all the facts. We respectfully submit that in light of all the facts in this case, justice requires that the dismissal be reversed and that Raribay Partners be allowed to intervene. Thank you. Thank you, Ms. Anders. Any further questions? Judge Sir Heinrich? Judge Donnell? No. All right. Case will be submitted. Thank you, counsel, for your arguments. You may call the next case.